Argued at Pendleton October 28; affirmed December 1, 1936

# HAUN *v.* CROSS COUNTRY CANAL CO.
### (62 P. (2d) 937)

Department 2.

*S. H. Burleigh,* of La Grande (Burleigh & Burleigh, of La Grande, on the brief), for appellant.

*Robert V. Chrisman,* of Enterprise, for respondent.

BELT, J.   This is a suit to cancel a deed purporting to convey to the Cross Country Canal Company a strip of land 50 feet in width, "as the same is finally staked out and located", to be used as a canal to carry water from the Wallowa river to the south fork of such stream. The plaintiff, who owns a large and valuable farm in the beautiful Wallowa valley, alleges in his complaint that this deed of conveyance executed by him on February 16, 1935, was procured through fraud and

misrepresentation of persons acting on behalf of the defendant company, which was later to be organized; that the "line or route of said canal had been surveyed but not marked upon the ground" and that it would cross at or near the south line of a certain quarter section of land owned by him. He avers that, instead of locating the canal at or near the south line as above represented, the organizers of the canal company "changed the entire route of the canal" and located it across the land of the plaintiff about one-half mile north of the original and intended location. Plaintiff further avers in substance that the canal, if located and constructed across his farm as now proposed, will be of great hindrance to him, and that he would not have executed and delivered the deed of conveyance had he known the canal would not be located at or near the south line of his property.

The defendant company denied the charge of fraud and affirmatively pleaded that the title be quieted to the strip of land in controversy.

The trial court entered a decree dismissing plaintiff's suit and quieting the title as prayed for by defendant. Plaintiff appeals.

■ The learned and experienced trial judge, who saw and heard the witnesses testify, was quite right in holding that fraud had not been established in this case. After reading the entire transcript of the evidence we are convinced that plaintiff knew what he was doing when he executed the deed conveying the right of way for irrigation purposes. Plaintiff's son, who was secretary of the corporation, kept his aged father fully advised about all matters in connection with the construction of the proposed canal. There was never any plan or intention to construct the canal at or near the south line of plaintiff's farm, as the cost of such con-

struction would have been practically prohibitive. At the time the deed was executed, it had not been definitely determined where the canal would be located—as evidenced by the language of the deed itself. The canal "as staked out and located over and across" the land of the plaintiff is only about 150 feet north of the surveys made in 1920 and 1926. If the canal were located where plaintiff contends it should be, an eight or nine foot cut on a steep side hill would be necessary. It would not be feasible to take water from such a canal to irrigate plaintiff's land which slopes to the north. The canal, as now located, being only 18 inches deep, enables plaintiff to irrigate much of his land on the north side thereof; aside from affording water for his livestock.

For many years there had been much talk among the farmers interested about the construction of a canal to take water from the Wallowa river for irrigation purposes. According to the testimony of Edgar Marvin, county judge of Wallowa county, the plaintiff, in January, 1935, requested him to "take charge of a program to start the canal", stating that "it was something the whole county down there needed". Marvin, acting pursuant to the request of the plaintiff, had engineers estimate the cost of the project. An agreement was signed by numerous farmers interested, among whom was the plaintiff, pledging acreage in support of the plan. The corporation was organized and plaintiff's son, who had been acting for his father in furtherance of the project, was elected secretary. Plaintiff paid the first assessment to defray preliminary expenses. He did not raise his voice in objection until the actual construction of the ditch was begun.

Notwithstanding the plaintiff had alleged the execution and delivery of the deed, on trial he boldly contended that he never signed the deed. His son, however,

testified that he took the right of way agreement to his father and that he saw plaintiff sign the instrument in question. Bank officials who were familiar with the signature of the plaintiff testified that the signature in question was that of the plaintiff. Such plain evasion on the part of the plaintiff tends to weaken the rest of his testimony. There can be no question about the execution of the deed. Indeed, it is admitted under the pleadings. The mere fact that plaintiff did not read the one sheet typewritten instrument submitted to him for execution is immaterial. He had the opportunity to read it had he so desired.

■ Having failed to show fraud, plaintiff on appeal now urges mutual mistake, but since such was not an issue under the pleadings no great amount of attention need be given to this phase of the case. Regardless of the question of pleading, we have no hesitancy in saying that the record fails to disclose mutual mistake. Plaintiff does not seek reformation of the deed, but desires to have it set aside in order to pave the way for a damage action. We think he should abide by his agreement.

The decree of the lower court is affirmed. Defendant is entitled to costs and disbursements.

RAND, BEAN and BAILEY, JJ., concur.